## SAUNDERS v. UNITED STATES et al.

## UNITED STATES v. SAUNDERS et al.

Circuit Court of Appeals, Seventh Circuit. November 14, 1927.

Nos. 3914, 3915.

1. **Army and navy ⬅51½—Award of war risk insurance to insured's brothers and sisters, to exclusion of aunt claiming to stand in loco parentis, held sustained by evidence.**

In suit to reform and then to recover on a war risk insurance policy issued to plaintiff's nephew, in which insured was named as beneficiary, brought on theory that plaintiff stood in loco parentis to insured, finding and decree thereon, awarding insurance to insured's brothers and sisters as next of kin, *held* sustained by the evidence.

2. **Army and navy ⬅51½—Unmatured installments of war risk insurance held part of "amount recovered," within statute limiting attorney's fees (38 USCA § 551).**

Monthly installments under war risk insurance policy, not yet due when judgment determining right to insurance was rendered, *held* part of the "amount recovered," within 38 US CA § 551 (Comp. St. § 9127½—500), limiting counsel fees of successful party to 10 per cent. of the amount recovered.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Amount Recovered.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Perilee Saunders against the United States and others. From an adverse decree, plaintiff appeals; from so much thereof as allows attorney's fees, the United States separately appeals. Affirmed.

Benj. G. Pollard, of Chicago, Ill., for Saunders.

Wm. Waller, of Nashville, Tenn., for Thatcher and others.

George E. Q. Johnson, U. S. Atty., and Edgar B. Elder, Asst. U. S. Atty., both of Chicago, Ill., for the United States.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellant Saunders, through this suit, sought to reform, and then to recover upon, a war risk insurance policy issued to Turley B. Thatcher, a soldier of the late World War, who died in action in France. His brothers and sisters were named as codefendants in this suit. The assured was named as beneficiary.

The Bureau of War Risk Insurance awarded the sums due upon the policy to the next of kin of the deceased, to wit, the brothers and sisters. The District Court affirmed the action of the bureau, and awarded the sum of $750 to the attorney representing the heirs at law. The government assails this allowance of $750 to the attorney, and the appellant Saunders, in a separate appeal, challenges the correctness of the holding in favor of the heirs at law.

[1] Respecting the issues presented by appellant Saunders, we find the testimony to be sharply conflicting. There is evidence supporting her claim that she, as an aunt, stood in loco parentis to the deceased soldier for some 10 years before he entered the service; that when the assured took out his insurance he expressed great affection for his aunt, as well as his determination to make her the sole beneficiary in the insurance policy. There is also evidence tending to show that he was prevented from doing so because informed that he could not name as his beneficiary one so far removed, and that he thereupon announced that he would not name his brothers and sisters; that a compromise was effected, and he named himself. Other testimony tended to show that later, and shortly after he was mortally wounded, he

expressed the hope that his insurance would go to his aunt.

On the other hand, there is testimony, some of which is documentary, tending very strongly to refute the foregoing evidence. Deceased was born in 1888, and did not come to Chicago, where appellant Saunders resided, until he was 18 years of age. He was about 29 when he entered the military service. About the time he took out his insurance, he wrote several letters to one Ridley, who lived in Tennessee, and who was referred to as an uncle. These letters conclusively refute the hostile feeling alleged to exist on his part toward his sisters. In one of his letters he wrote:

"Now I want you to send me my sisters address I am in a ten thousand dollars insurance and I want to no ho my friend so if I should get killed they can get the money."

A little later he wrote again to Ridley:

*"Now I have maid my insurance over to you when I get the papers I will send them."*

Still a third letter appeared from which the following is taken:

"Now uncle I am in the best of health and when thes few lines reachs you they will find you the same. Now I like to hear from sister Emma. When you here from her tell hur that I want to here from Hur and the children."

There was other evidence tending to show that the deceased did not live with or have anything to do with his aunt for several years before he entered the service; that he lived with some friends in Chicago. He directed the policy to be mailed to himself, giving the address of these last-named friends. Whether appellant Saunders knew this address, or where he lived before he entered the service, is not free from doubt. Upon this state of the record, we would not be justified in disturbing the finding of the District Court, upon which the decree in favor of the brothers and sisters depended.

[2] Respecting the appeal from that portion of the decree which fixed the attorney's fee at $750, little need be said. The facts are not involved nor are they in dispute. The policy was one calling for monthly payments of $57.50 each. Up to August 11, 1920, 21 installments had been paid; 219 installments, aggregating a total of $12,592.50, were still unpaid. The unpaid past-due installments amounted to $4,427.50. Portions of the statute which control this case read as follows:

"That wherever a judgment or decree shall be rendered in an action brought pursuant to section 19 of title 1 of this act the court, as a part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same as proper, said fees not to exceed 10 per cent. of the amount recovered and *to be paid by the bureau* out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid." 38 USCA § 551 (Comp. St. § 9127½—500).

The government contends that under this statute the court could allow no more than one-tenth of the unpaid past-due installments, or $442.75. It is admitted that the services actually rendered were worth $750.

We have no doubt but that the words "amount recovered," as used in this statute, include the monthly installments not yet due, as well as those that became due prior to the entry of the decree. Any other construction would lead to absurd results. This conclusion has judicial support. United States v. Konstovich, 17 F.(2d) 85.

The decree is affirmed.